LEXINGTON STATE BANK v. ROSE CITY CREAMERY CO.

1. BILLS AND NOTES — PRINCIPAL AND AGENT — EVIDENCE — PAROL EVIDENCE—INTENT.

Between the immediate parties to a bill or note, parol evidence is admissible to show that the instrument was, to the knowledge of the parties, intended to be the obligation of the principal, and not of the agent, and that it was given and accepted as such.

2. SAME—MORTGAGES—FORECLOSURE—DEFICIENCY DECREE—PRINCIPAL AND AGENT.

Where the evidence shows that in the making of a mortgage by a corporation, certain of its directors indorsed the note given therewith in their official capacity, intend-

On the question of admissibility of parol evidence to show intention of the parties to indorsement as controlling liability, see note in 18 L. R. A. 35.

ing thereby to give validity to the instrument executed, the mortgagee, on foreclosure proceedings, is not entitled to a decree for deficiency against said directors personally.

Appeal from Ogemaw; Sharpe, J. Submitted June 10, 1919. (Docket No. 85.) Decided July 17, 1919.

Bill by the Lexington State Bank against the Rose City Creamery Company and others for the foreclosure of a mortgage. From a decree dismissing the bill as to all but defendant company, plaintiff appeals. Affirmed.

*B. J. Henderson* (*Harris & Chapin*, of counsel), for plaintiff.

*William T. Yeo*, for defendants.

This is an appeal by the plaintiff from a decree of foreclosure of a certain mortgage given to plaintiff by the defendant Rose City Creamery Company. The circuit judge refused to grant a decree for deficiency against certain individual defendants whom plaintiff sought to hold liable for the deficiency as indorsers of the promissory note to which the mortgage was collateral. The bill was dismissed as to these defendants.

On March 25, 1910, at a meeting of the stockholders of the Rose City Creamery Company, the following resolution was adopted:

"Whereas, there is considerable indebtedness outstanding from the Rose City Creamery Company, a corporation, to the bank of Bell, Niggeman & Company, for moneys had and received for the use of said creamery company to pay a deficit in operating the creamery plant for the past two years, amounting to the sum of eight hundred dollars.

"And whereas, there are no funds in the treasury of the Rose City Creamery Company to pay said indebtedness,

"Resolved, that the president and secretary be, and they are hereby authorized and empowered to execute

real estate and chattel mortgages in the name of the Rose City Creamery Company in amount not to exceed eight hundred dollars, payable in two years, at the rate of seven per cent. per annum, to the order of the bank of Bell, Niggeman & Company, or to the Lexington State Bank, or to whoever said bank of Bell, Niggeman & Company may suggest, to secure the aforesaid indebtedness. Said president and secretary being authorized and empowered to sign in the name of the Rose City Creamery Company a promissory note as evidence of said indebtedness, which will be secured by said mortgage."

It does not appear that all of the stockholders attended this meeting, nor even that all of the members of the board of directors were there present. The minutes simply state:

"Resolution adopted by the following votes: Ayes, unanimous. A majority of the stockholders being present."

No meeting of the board of directors was held to authorize the execution of the note and mortgages, but on the following day the president and secretary of the company signed a promissory note, of which the following is a copy:

"$800.00      ROSE CITY, MICH., March 26, 1910.

"Two years after date, for value received, I promise to pay to the order of Lexington State Bank, eight hundred dollars, at the Rose City Bank, Rose City, Michigan, with interest at the rate of seven per cent. per annum until paid. All indorsers, sureties and assignors severally waive presentment for payment, protest and notice of protest for nonpayment of this note, and all defense on the ground of any extension of time of its payment, that may be given the maker or makers thereof.

"ROSE CITY CREAMERY CO.,
"H. S. KARCHER,
"Secretary and Treasurer.
"F. B. ARTHUR,
"President.
"Secured by real estate and chattel mortgages."

At the date of the hearing of this cause the note bore the following indorsements:

"O. N. BARBER  ⎫
"DEXTER SAMMONS ⎬ Directors.
"WESLEY CHASE  ⎮
"ALEX. FREEMAN ⎭

"Pay to order of Lexington State Bank, Lexington, Michigan, without recourse,

"ROSE CITY STATE BANK, Rose City, Michigan,
"BELL, NIGGEMAN & CO."

The testimony indicates that the signatures of at least three of these four directors were obtained before delivery of the note. It also appears from the evidence that there were three other directors of the corporation who did not sign the note in any capacity. The president and secretary also executed, on behalf of the corporation, and under its seal, a mortgage collateral to the above note and bearing even date therewith, covering the creamery company's land in Rose City. This mortgage recites that it was executed,—

"by officers duly authorized by resolution of stockholders at a meeting held March 5th, 1910."

It is conditioned upon the payment of $800 two years from date, with interest at seven per cent. per annum, payable annually:

"According to a certain promissory note of this date executed by Rose City Creamery Co., *et al.*, to the second party."

Nothing was ever paid on either the principal or the interest of this note and mortgage, and on March 9, 1918, plaintiff filed its bill to foreclose the mortgage, praying, among other things, for a decree for deficiency against the defendants Oliver N. Barber, Dexter Sammons, Wesley Chase, and Alex. Freeman as indorsers of said note. The bill was taken as confessed by the creamery company, but the individual

defendants filed an answer, denying liability, it being their claim that they signed merely as directors in order to make the note valid as against the corporation, and that they did not sign as indorsers. As a further defense, they claim that the note is invalid because its execution was never legally authorized by the creamery company.

Over objection, the court allowed evidence to be introduced in explanation of the signatures of the defendants appearing on the back of the note. Among other things, it was claimed that the note in question was given to take up a prior note of the company, of which the following is a copy:

"WEST BRANCH, MICHIGAN, February 15th, 1909.

"Three months after date, for value received, I promise to pay to the Rose City Bank of Bell, Niggeman & Company, Rose City, Michigan, or order, six hundred dollars ($600), with interest at the rate of seven per cent. per annum after date. This note is given for the Rose City Creamery Company, by its officers and is binding upon both the individuals and the company.

> "THE ROSE CITY CREAMERY CO.,
> "Per F. B. ARTHUR, President.
> "B. J. CORWIN, Vice-President,
> "H. S. KARCHER, Sec'y & Treas.,
> "WILLIAM CROZIER, Director,
> "CHAS. E. KINYON, Director,
> "L. M. McLEES, Director,
> "HENRY CAMPBELL, Director,
> "OLIVER N. BARBER, Director,
> "JOSEPH SCHNEIDER, Director."

There was some testimony to the effect that it was the original intention to secure the signatures of *all* the directors on the back of the note of March 26, 1910, in order to signify their assent to and authorization thereof, no formal meeting having been held; that the signatures were placed in a bracket followed by the word "directors" under the advice of their attorney,

Mr. Earl R. Chapin, who stated to Mr. Karcher that by signing in this way they would incur no personal liability. This, however, was denied by Mr. Chapin. After hearing the case, the trial judge filed an opinion, in part as follows:

"A corporation can only act through its officers and agents and the statute provides the agencies through which such action must be had. The legal entity, the corporation, owns the property and it can only be divested of title by action on the part of its board of directors, who are made its managers by the statute. While it would be eminently proper for the directors to call a stockholders' meeting and be governed by their advice and action, yet to bind the corporation, the directors must themselves act. The record fails to show any such legal action on the part of the corporation. It does not even show that the meeting of the stockholders was legally called nor that a majority of the stock was represented at the meeting. There seems to be no way in which the action had can be treated as that of the corporation.

"The individual defendants are proceeded against under a statute which makes them liable only for deficiency. They are clearly entitled to raise the defense of a want of liability on the part of the company. While not strictly guarantors, the relation is so nearly akin to it as to permit them to raise any defense which their principal might make.

"This disposes of the case, but in view of an appeal, I feel constrained to consider the other defense raised. It presents an interesting legal question as well as one of fact. Counsel for the plaintiff insist that the word 'directors,' written after the signatures of the indorsers, is merely surplusage and in no way affects their liability. There is apparently much conflict in the authorities as to the effect of such a word of limitation following a signature. The signature of the proper officers to bind the corporation are appended. It was not necessary for the directors to sign to create a corporate liability.

"But where suit is brought by the payee, I think the great weight of authority holds that parol evidence is admissible to establish the fact as to whether

or not it was the intention of the parties that the directors should be individually liable.  Mr. Mechem in his work on Agency, § 443, quoted in *Keidan* v. *Winegar*, 95 Mich., at page 432 (20 L. R. A. 705), says that while it is true, as a general rule, that parol evidence is not admissible to exonerate an agent from a contract, where the paper bears on its face some reference to a principal, the preponderance of authority warrants the statement of the rule that:

" 'Between the immediate parties to a bill or note, parol evidence is admissible to show:  *  *  *  that the instrument was, to the knowledge of the parties, intended to be the obligation of the principal and not of the agent, and that it was given and accepted as such.'

"Let us now examine the proofs bearing on this question.  All of the defendants swear that they did not intend to render themselves individually liable. Mr. Karcher says he told them they must sign in order to make the company liable and that he did this on the advice of their attorney.  Mr. Bell says there was nothing said to him about it.  It must be borne in mind that this transaction occurred more than eight years ago and the recollection of the witnesses as to what was said may well be hazy.  There are, however, certain undisputed facts which stand out as landmarks, which, in my opinion, control in determining this question.

"1. The former note given to Bell, Niggeman & Co. was signed by certain of the directors as 'directors' and it expressly provided that they, as well as the president and secretary, should be liable individually as well as officers of the corporation.  At that time it was evidently the understanding of the parties that such provision was necessary to create individual liability.  It may also be noticed that neither the president, Mr. Arthur, nor the secretary, Mr. Karcher, indorsed the note in question, though liable on the other note.

"2. These defendants all have lived in the immediate vicinity of Rose City since this note was executed. Mr. Bell has also lived there all of that time.  He had this mortgage in his possession as an officer of the bank since its delivery.  No demand has ever been

made on any of the defendants for the payment of either principal or interest and the first intimation the defendants had of claimed liability on their part was when this suit was begun.

"3. The lack of action on the part of the board of directors can only be accounted for by the understanding of the parties that if all of the directors signed, as it was understood they would, this would amount to action authorizing the loan on the part of the board.

"These facts satisfy me that there was no intention to hold the defendants individually liable when they signed."

Pursuant to this opinion, a decree was entered dismissing the bill as to the individual defendants, but granting foreclosure of the mortgage and a decree for deficiency against the Rose City Creamery Company.

KUHN, J. (*after stating the facts*). The learned trial judge came to the conclusion that the question as to whether the defendants who signed the obligation as directors, signed for the purpose of binding themselves individually, or simply to legalize the action of the stockholders' meeting, became, under the circumstances of this case, a question of fact. We are of the opinion that, under the authorities relied upon by the trial judge in his opinion above set forth, he arrived at a correct conclusion with reference thereto, and after a careful reading of the record we are also satisfied that he correctly determined the question of fact therein presented, for the reasons set forth in his opinion, which we hereby adopt as our own.

The creamery company not being a party to this appeal, and having been defaulted, and because of the conclusion that there is no individual liability on the part of the other defendants, it becomes unnecessary for us to determine the other interesting question passed upon by the trial judge, as to whether or not

the defendant corporation was legally bound by the action of its stockholders as shown by the corporate records produced on the trial.

The decree of the court below is affirmed, with costs to the appellees.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.